JOHN S. GULLBORG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5173.   Decided November 26, 1926.

The evidence does not establish that petitioner made a *bona fide* transfer of the deferred purchase-price installments for property sold by him.

*Carlyle N. Keys, Esq.*, for the petitioner.
*C. H. Curl, Esq.*, for the respondent.

The Commissioner determined deficiencies in income tax for the calendar years 1920 and 1921, in the amounts of $6,430.61 and $2,106.30, respectively. The notice of the deficiencies for these years mailed to the petitioner sets forth the Commissioner's determination of no deficiency for the calendar year 1919.

Petitioner claims that no part of a profit derived from a sale by him on December 29, 1919, of his interest in certain property was income to him, for the reason that immediately after and on the date of the sale the agreement of the purchaser to pay for the property was assigned by petitioner to his wife.

### FINDINGS OF FACT.

Petitioner is a resident and citizen of Chicago, Ill. On December 29, 1919, he was the owner of an undivided interest in certain property known as the "Lubricator Division" of the Alemite Die-

Casting & Manufacturing Co., an Illinois corporation. On that date he sold his interest in this property for $81,624.96 to The Bassick Company, a Connecticut corporation. The written agreement between the parties at the time of the sale was in part as follows:

THIS AGREEMENT, Made this 29 day of December, A. D. 1919, by JOHN S. GULLBORG, C. M. HEDMAN, H. R. HEDMAN, A. V. GULLBORG and F. E. JOHNSON, all of Chicago, Illinois, parties of the first part, and THE BASSICK COMPANY, a corporation duly organized under the laws of the State of Connecticut, party of the second part,

WITNESSETH:

*     *     *     *     *     *     *

WHEREAS, the first parties are desirous of selling all of their interest in and to said property and are willing individually and severally to enter into a restrictive covenant not to engage directly or indirectly, in the lubricating business, with limitations as to time and space as hereinafter more fully set forth; and

WHEREAS, the second party is willing to purchase the interest of the first parties in and to said property with the protection afforded by said restrictive covenant, upon the terms and conditions hereafter stated;

Now THEREFORE, in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, and in consideration of the mutual covenants and agreements hereinafter contained, the parties hereto agree as follows:

FIRST: The first parties have granted, bargained, sold and delivered, and by these presents do grant, bargain, sell and deliver to said Bassick Company all of their right, title and interest in and to that property formerly owned by the Alemite Die-Casting & Mfg. Co. and generally known and described by the parties as "the lubricator division" of said Company, including:—

(a) The existing lease to the premises at 361 West Superior Street, Chicago, which Bassick Company agrees to assume, and all of the machinery and equipment, both office and factory, at present therein.

(b) The good will and all patent and trade mark rights, both domestic and foreign, and including the sole right to use the name "Alemite" in the conduct of a lubricator business, together with the rights and obligations under any contracts or agreements or in any way relating thereto.

(c) All existing contracts relating to said property, including both rights and obligations thereunder.

(d) All inventory materials, raw, in process, finished and on the floor, at the close of business October 28, 1919.

(e) Any and all die casting dies or special tools, fixtures and dies now used in the manufacture of lubricating devices at 341 West Chicago Avenue, Chicago, Illinois.

The second paragraph provided that the first parties should not at any time prior to January 2, 1923, engage in the business of manufacturing or selling any lubricating device similar to the Alemite Lubricator, directly or indirectly, within the United States, except in the counties of New Mexica and Massac in the State of Illinois.

THIRD: The Bassick Company agrees to pay to the first parties for their use in severalty in the proportions hereinafter stated, for said property and

for the continuing observance by the first parties severally of the restrictive covenant heretofore mentioned, the sum of Two Hundred and Fifty Thousand Dollars ($250,000.00) in manner following: Sixty-two Thousand, Five Hundred Dollars ($62,500.00) in cash upon the execution and delivery of this agreement, and

$20,406.24 on the 1st day of May, A. D. 1920,
$42,093.76 on the 2nd day of January, A. D. 1921,
$20,406.24 on the 1st day of May, A. D. 1921,
$42,093.76 on the 2nd day of January, A. D. 1922,
$20,406.24 on the 1st day of May, A. D. 1922,
$42,093.76 on the 2nd day of January, A. D. 1923.

All of said payments shall be made to Foreman Bros. Banking Company, Chicago, Illinois, for the sole use and benefit of the first parties. Upon receiving the said payment the said Banking Company shall distribute the same to the first parties as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| To John S. Gullborg on December 29, 1919 | | | | | | $8,162.50 |
| " " " " " January 2, 1920 | | | | | | 12,243.74 |
| " " " " " May 1, 1920 | | | | | | 20,406.24 |
| " " " " " " 1, 1921 | | | | | | 20,406.24 |
| " " " " " " 1, 1922 | | | | | | 20,406.24 |
| | | | | | | $81,624.96 |

Here follows a tabulation similar to the above relating to the amounts to be paid to the other four individuals mentioned in the agreement and a provision that Foreman Bros. Banking Co. was acting for the parties of the first part and was to be compensated by them, after which the agreement continued:

To secure the payment of said deferred installments, The Bassick Company has this day deposited with Foreman Bros. Banking Company the following securities as collateral: $39,000 U. S. Liberty Bonds and 150 shares of the capital stock of American Telephone & Telegraph Co. (Certificates G41536 for 100 shares and P53243 for 50 shares); 25 shares common capital stock of Union Pacific Railroad Co. (Certificate A203139); 45 shares capital stock of the Southern Pacific Co. (Certificate F104220); 170 shares of common capital stock of U. S. Steel Corporation (Certificates F667279 for 70 shares and G719502 for 100 shares, together with Powers of Attorney to transfer said stocks. The Foreman Bros. Banking Company so long as The Bassick Company is not in default, is to forward to it regularly and without charge coupons on said bonds as they become due.

Then followed a provision that, upon default in the payment of any installment or installments, Foreman Bros. Banking Co. should give notice by mail to all parties fifteen days before it should take any further action under the contract, and that if the second party was still in default at the termination of such notice Foreman Bros. Banking Co. was authorized to sell so many of the securities as might be necessary to satisfy the defaulted installments with interest, together with all costs and charges, including attorney's fees. The agreement then further declared:

And to further secure the payment of said installments, The Bassick Company does hereby authorize irrevocably any attorney of any court of record to appear for it in such Court during term time or vacation, at any time after default and expiration of said fifteen days notice, and confess a judgment without process against it in favor of the first parties, or any one or more of them, for such amount as may appear to be unpaid on this contract, together with interest, costs and reasonable attorney's fees on such amount; to waive and release all errors which may intervene in such proceedings and consent to immediate execution upon such judgment, hereby ratifying and confirming all that said attorney may do by virtue hereof.

Installments past due shall bear interest at the rate of seven (7) per cent per annum until paid.

No collateral securities placed in the hands of said Banking Company shall be delivered to Bassick Company until all payments under this contract are fully made, except that the Banking Company may in its discretion allow the substitution or withdrawal of securities.

  \*   \*   \*   \*   \*   \*   \*

This agreement was signed by the petitioner and the other individuals mentioned, as parties of the first part, and The Bassick Company, as party of the second part, on December 29, 1919.

When the sale had been made and the aforementioned agreement had been signed, petitioner and his attorney discussed the matter of Federal income tax. The attorney stated that in his opinion the sale was not taxable, but advised petitioner to assign the agreement to his wife in order to save any income tax which might result from a holding that there had been a taxable gain. Pursuant to this advice, and because of the often expressed wish of his wife that she should have separate funds to invest, petitioner, in the evening of the day on which the sale was made, executed and delivered to Agda H. Gullborg, his wife, the following agreement:

For value received I hereby assign all my right, title and interest in the within contract with the Bassick Mfg. Company to Agda H. Gullborg and covenant to observe any covenants that will entitle the assignee herein to receive the amounts set forth.

           JOHN S. GULLBORG  (SEAL)

Dated at Chicago,
this 29th day of December 1919.

All payments under the agreement were made by The Bassick Company to Foreman Bros. Banking Co. and by the latter to the petitioner.

The first two payments of $8,162.50 and $12,243.74 were deposited by the petitioner in his individual bank account. Thereafter, he drew checks for the amounts in favor of his wife and she deposited the same in a bank account opened by her in her own name. On or shortly before May 1, 1920, the date of the third payment, petitioner, after discussing the matter with his wife, and at her suggestion, opened a joint bank account in the name of the two of them, and the payments thereafter received by the petitioner were deposited by

him in this account. At the time of the sale hereinbefore mentioned petitioner was indebted to the Alemite Die-Casting & Manufacturing Co., a corporation in which he owned a one-fifth interest, in the amount of $28,000. With the consent of his wife he used $14,000 of the proceeds of the sale in partial liquidation of that indebtedness.

Out of the proceeds of the sale received during 1920 and 1921 petitioner's wife expended $8,000 for certain stock of the Unity Oil & Gas Co. of Muncie, Indiana, $5,000 of which was taken in her name and $1,500 in the name of each of her two children. A portion of the amounts received was used to satisfy a mortgage on the home, the title to which was in the name of petitioner and his wife; a portion was used to purchase land in Michigan, the title to which was taken in the name of petitioner and his wife, and to erect thereon a summer home. Approximately $7,000 was used to purchase certain real estate located in Chicago, the title to which was taken in the name of petitioner and his wife. Certain real estate in Florida was purchased for $15,000 and title thereto was taken in the name of Mrs. Gullborg. Certain undisclosed sums were used in refurnishing the home and paying the tuition and expenses of a daughter in college.

Mrs. Gullborg and the petitioner always conferred together before making any payments out of money received under the agreement. The petitioner made suggestions as to the advisability of contemplated purchases and no expenditures or investments were made without his consent first being obtained.

OPINION.

LITTLETON: The petitioner reported no income from sale of his interest in certain property to The Bassick Company on December 29, 1919, and claims that he is not subject to tax thereon for the reason that he assigned his rights under the agreement to his wife. The Commissioner apparently held that the transaction between the petitioner and others, and The Bassick Company, was an installment sale and determined the petitioner's gain in the taxable years 1920 and 1921 upon that basis. The Commissioner insisted that the purported assignment by petitioner to his wife of his right, title, and interest under the agreement with The Bassick Company was only a pretended one and that it was not *bona fide.*

The Board is of the opinion that the Commissioner's determination was correct. We believe the petitioner did not relinquish his right, title, and interest to the proceeds of the sale. Every installment was paid to and received by him. For a period of five months he deposited the payments in his individual bank account. Thereafter, as he received payments, they were deposited by him in a joint bank account which he had opened in the name of himself and his wife.

A large amount of the proceeds of the sale was used by him to discharge and liquidate his personal indebtedness. No portion of the money was expended or invested without his advice and consent. With the two exceptions of the Florida real estate and the Unity Oil & Gas Co. stock, all expenditures and investments were for the joint use and benefit of the petitioner and his wife. The record does not specifically show, but the evidence would indicate, that the petitioner in some cases disbursed the money. The proceeds of the sale were so held by the petitioner that they were at all times subject to his use and disposition. The expenditures and investments indicated nothing more than that, as a prudent husband and father, the petitioner was handling the fruits of his labor in what he regarded as a wise and judicious manner. With the exception of the property sold on December 29, 1919, petitioner's only assets consisted of $10,000 par value of capital stock of the Alemite Die-Casting & Mfg. Co. and a residence of the approximate value of $18,000, owned by himself and his wife jointly.

We are of opinion from the entire record that the petitioner did not by the assignment part absolutely with his right, title, and interest in the unpaid installments provided in the sales agreement, and that the Commissioner correctly held that whatever gain resulted from the payments made to petitioner during the taxable years was income to him.

*Judgment will be entered for the Commissioner.*